UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD NATHANIEL HURTADO,
Plaintiff,

v.

OFFICER N. REVELES, et al.,
Defendants.

Case No. 25-cv-06437-RMI

**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 20

Now pending before the Court is Defendants' Motion for Summary Judgment on the merits and on qualified immunity grounds. (Dkt. 20.) Plaintiff did not file an opposition, or otherwise communicate with the Court, despite being provided a reminder and an extension. The Court still looks to the merits and for the following reasons, the Motion is GRANTED.

**BACKGROUND**

**Allegations in the Complaint**

Plaintiff, a state prisoner, sued Salinas Valley State Prison Correctional Officers Reveles and Perez pursuant to 42 U.S.C. § 1983 for excessive force. (Compl., Dkt. 1.) Plaintiff alleged that he was walking toward his housing unit at the prison when there was an alarm. (*Id*. at 3.) He laid down in a prone position and was handcuffed and brought to his feet. (*Id*.) As Reveles and Perez were escorting Plaintiff, Plaintiff stopped and started to clear his throat. (*Id*.) Perez ordered him to spit, and Reveles grabbed his throat and Perez grabbed his chest area. Plaintiff asked Perez why he grabbed his throat. (*Id*.) Defendants slammed Plaintiff forward, with the right side of his face and body on the ground. (*Id*.) Reveles had his knees on Plaintiff's back and neck, and Perez had his knees on Plaintiff's head and shoulders. (*Id*. at 4-5.) Plaintiff asked them to get off because he was in pain and the blood flow to his neck and head was stopping, and he could not feel his neck. (*Id*. at 4.) Defendants responded that was not their problem and told him not to move. (*Id*.) Reveles also later slammed Plaintiff backwards while Plaintiff was stepping into the program office. (*Id*.)

United States District Court
Northern District of California

**Allegations at the Deposition**

Plaintiff's allegations changed somewhat during the deposition. Plaintiff stated that Defendants directed him not to speak and slammed him on his back after he verbalized a claim of excessive force occurring against the other inmate. (Dkt. No. 22, Hurtado Dep. 14:20-21.) He further stated that officers hit him, jumped on his back while other people were on his back and neck. (*Id*. at 22-24.) He stated that Defendants struck him in the back of his head, back, and side. (*Id*. at 18:14.) Plaintiff alleged that he could not breathe and he was unable to speak because Defendants were on top of him. (*Id*. at 14:24-15:1.)

**Factual Background**[1]

On July 2, 2024, Plaintiff and another inmate, Botello, began to shout expletives at a correctional officer while in the yard at Salinas Valley State Prison. (Defs. Mot. (Dkt. 20), Reveles Decl. ¶¶ 3-4.) The officer announced over the radio that there were disruptive inmates on the yard. (*Id*. ¶ 4.) Reveles and Perez responded with other officers. (*Id*. ¶ 5.) Both inmates were ordered to assume a prone position, and they complied. (*Id*.)

Perez placed Plaintiff in handcuffs and began to escort him to the gymnasium, while standing on Plaintiff's left side and holding his left arm. (Perez Decl. ¶¶ 6-7; Secondine Decl., Reveles Body Worn Camera ("BWC") at 0:08-0:22.) Reveles escorted Plaintiff while standing on his right side and holding his right arm. (Reveles BWC at 0:05-0:23.) Plaintiff and Defendants were walking behind Botello and his escorting officers. (*Id*. at 0:26-0:29.)

There was an interaction between Botello and the officers escorting him and the officers took him to the ground. (*Id*. at 0:31-0:34.) Plaintiff and Defendants stopped walking to allow officers to gain control of Botello. (*Id*. at 0:32-0:38.) Plaintiff began to audibly gather saliva in his mouth and began to lunge forward towards the other officers. (Perez BWC at 0:37-0:39; Perez Decl. ¶ 9; Reveles Decl. ¶ 8.) Plaintiff was ordered not to spit. (Reveles BWC at 0:35-0:38; Perez Decl. ¶ 9.) Plaintiff continued to tense his body and lunge forward. (Sergeant BWC at 0:20-0:30;

[1] Defendants submitted video evidence in support of the Motion, along with declarations. (Def's Mot. Exs. 1-8.) Plaintiff did not file an opposition or otherwise address the evidence presented by Defendants. Plaintiff viewed the video evidence on March 18, 2026. Secondine Decl. ¶ 5.

Yard Camera at 1:18-1:21; Perez Decl. ¶ 10; Reveles Decl. ¶¶ 8-9.)

Defendants perceived an imminent threat based on Plaintiff gathering spit and attempting to break free from their grip on his arms. (Reveles Decl. ¶ 10.) To control Plaintiff, Perez placed his left hand on Plaintiff's chest, and Reveles placed his arms on Plaintiff's chest and torso and used his body weight to bring Plaintiff to the ground. (*Id.*; Yard Camera at 1:18-1:22.) Once on the ground, Defendants used their body weight to hold Plaintiff down until additional staff could assist. (Perez Decl. ¶¶ 12, 14; Yard Camera at 1:21-1:27.) Defendants did not kick or hit Plaintiff. (Sergeant BWC at 0:29-1:27; Yard Camera at 1:20-6:27.)

Plaintiff was promptly seen by medical staff. (Secondine Decl. ¶ 3, Ex. B1.) He was experiencing pain in the back of his head and lower back, numbness in his left forearm, and had an abrasion on his elbow. (*Id.*) Plaintiff was escorted off the yard by other officers, and Defendants did not interact further with Plaintiff on this day. (Perez Decl. ¶ 14; Reveles Decl. ¶ 12.)

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, a court will draw all reasonable factual inferences in favor of the nonmovant. *Id*. at 255. In deciding summary judgment motions, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory or speculative testimony or allegations do not raise genuine issues of fact and are insufficient to defeat summary judgment. *See e.g.,*

*Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The treatment a convicted prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial determination is whether force was applied in a good-faith effort to maintain or restore discipline, or was applied maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley*, 475 U.S. at 317). In making this determination, a court may evaluate the need for application of force; the relationship between that need and the amount of force used; the extent of any injury inflicted; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. Courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

**DISCUSSION**

The undisputed facts demonstrate that Defendants did not use excessive force, and they have met their burden in demonstrating that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Plaintiff did not file an opposition refuting Defendants' arguments or addressing the video evidence.

Even construing Plaintiff's verified complaint as an opposition, there are no disputed material facts to overcome summary judgment. Plaintiff's allegations are generally reflected in the video evidence. It is undisputed that Defendants utilized force against him, but the issue remains if the force was applied in a good-faith effort to maintain or restore discipline or was applied maliciously and sadistically to cause harm. Plaintiff has not addressed this issue.

It is undisputed that Plaintiff was handcuffed and escorted by Defendants when the other inmate was in an altercation with other officers right in front of them. Plaintiff began to gather

saliva in his mouth and was lunging forward towards the altercation while Defendants were holding him back. Defendants perceived that Plaintiff was attempting to attack the other officers and spit on them. Defendants noted that Plaintiff was tensing his body and resisting their grip on him as he lunged forward. Plaintiff does not address this issue or why he was resisting, lunging forward, and gathering saliva. While there could be an explanation for Plaintiff's actions, it was his responsibility to file an opposition and present arguments. Defendants then took Plaintiff to the ground and used their body weight to hold him until additional staff arrived.

Defendants have met their burden in showing they are entitled to judgment as a matter of law. Plaintiff has not attempted to meet his burden to identify facts showing there is a genuine issue for trial. Defendants demonstrated the force they used was necessary under the circumstances, as they were losing their grip on Plaintiff as he lunged towards the other correctional officers, and it was applied in a good-faith effort to maintain discipline. *See Bradley v. McCarter*, Case No. 20-cv-02077-KJD-NJK, 2023 WL 2328116, at *3 (D. Nev. Mar. 2, 2023) ("Resistance and defiance can quickly escalate, and order must be swiftly restored by [prison] officials."), *affirmed by Bradley v. McCarter*, Case No. 23-15417, 2024 WL 1477400, at *1 (9th Cir. 2024) ("Even if we accept that [Plaintiff] was choked and kneed for a short period of time, [Defendant's] use of force was not malicious or sadistic given [Plaintiff's] hostility, the quickly developing situation, and the surrounding environment crowded with inmates."). Plaintiff provides no arguments or evidence that the force was applied maliciously and sadistically to cause harm.

Only minor force was used in taking Plaintiff to the ground and holding him until other officers arrived. Other courts have described similar uses of force, where correctional officers "simply took [a prisoner] to the ground and held him there" in response to resisting an escort as "objectively minimal and proportional to the need to gain control of [the prisoner]." *Hammler v. Aviles*, Case No. 17-cv-1185-AJB (WVG), 2021 WL 5494323, at *5 (S.D. Cal. Nov. 23, 2021).

While Plaintiff did suffer some injuries, there was a threat perceived by Defendants, and there were clear efforts to temper the response. Plaintiff was not kicked, hit with fists or baton, or pepper sprayed. He was held on the ground until other officers arrived to assist. Medical care was promptly provided and Plaintiff only noted scratches, pain, and numbness. His injuries alone, do

United States District Court
Northern District of California

not demonstrate excessive force. *See Bruister v. Asuncion*, Case No. 17-cv-05106 PSG (RAO), 2020 WL 6385682, at *9 (C.D. Cal. Oct. 1, 2020) (ruling that injuries including bruising, swelling, pain, and active bleeding to a plaintiff's left arm, along with a bone fracture and an elbow injury requiring six sutures, "though not minimal, do not show that the use of force by [officers] was excessive in light of Plaintiff's conduct and the perceived threat"). For all these reasons, Defendants' use of force was not excessive, and they are entitled to summary judgment.

With respect to the new allegations Plaintiff discussed at his deposition, the video evidence refutes his argument that he was told not to speak and slammed to the ground after he stated that the other officers were using excessive force. The video also shows that Plaintiff was not struck in the head, back, and side as he alleged. Defendants are entitled to summary judgment.

Finally, Plaintiff also stated in the complaint that a Defendant slammed him down while later walking into the program office. However, Defendant presented evidence that he did not escort Plaintiff inside to the program office, rather it was a different correctional officer. Plaintiff does not address this discrepancy. Summary judgment is also granted for this claim.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether that right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). A court may exercise its discretion in deciding which prong to address first

in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). The Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 58 U.S. 73, 79 (2017) (per curiam); *see, e.g.*, *Kisela v. Hughes*, 584 U.S. 100, 104–08 (2018) (per curiam) (officer entitled to qualified immunity for shooting a woman who was armed with a large knife, was ignoring officers' orders to drop the weapon, and was within striking distance of her housemate; prior cases on excessive force did not clearly establish that it was unlawful to use force under these circumstances, where officer may not have been in apparent danger but believed woman was a threat to her housemate).

The Court has not found a constitutional violation in this case, but even if there was a violation, Defendants would be entitled to qualified immunity. It would not be clear to a reasonable correctional officer that the minimal amount of force used would be a constitutional violation in this situation where a prisoner was breaking away from their grasp and posed a danger to others.

**CONCLUSION**

Accordingly, for the reasons stated herein, Defendants' Motion for Summary Judgment (Dkt. 20) is **GRANTED**. A separate judgment shall issue, and the Clerk shall close this case.

**IT IS SO ORDERED.**

Dated: September 25, 2026

ROBERT M. ILLMAN
United States Magistrate Judge